Hodges
*v.*
Saunders.

## ELEAZER JOHNSON *et al. versus* EDMUND BARTLETT *et al.*

A mortgage of land before foreclosure or entry for condition broken, is personal estate.

Upon the death of a mortgagee of land before entry, his administrator with the will annexed, recovered as such administrator an unconditional judgment for possession of the land, which was delivered to him in pursuance of the judgment. Subsequently the mortgager conveyed all his right and title to the land, to the administrator, but without describing him as such in the deed. In the account of the administrator, the debt due upon the mortgage was credited at its nominal amount, but a certain sum was deducted in pursuance of an agreement, made with the legatees without the knowledge of the sureties of the administrator ; and a balance was found to be due from the administrator, upon the settlement of the account in the probate court, from which settlement no appeal was made. It was *held*, that as the conveyance by the mortgager could only operate as a release of the equity of redemption, it did not vest a new estate in the administrator in his own right, but only rendered the defeasible estate already vested in him an absolute estate, in trust, to be administered upon as assets of the mortgagee ; that if by the agreement with the legatees, the administrator was to take the land in his own right, thereby leaving the sureties liable for the payment of the balance due from him, such agreement could not be supported ; that a conveyance of the land by such administrator without a license of court, passed no estate to the grantee, or if technically any estate passed, it was clothed with the same trusts under which the administrator held it, and any person attempting to take a title under the administrator would be deemed to take with notice of such trusts ; and that the land in the hands of any such person was applicable to the relief of the sureties of the administrator, from their liability for the balance due from him.

THIS was a bill in equity brought by Eleazer Johnson and Robert Laird, in their own right, and by Caleb Cushing, Esq. as administrator *de bonis non*, with the will annexed of the

estate of John Brown, deceased. The bill set forth, that of June 9, 1827, John Brown died testate, leaving estate of which administration with the will annexed was granted to Clement Starr, one of the defendants ; that two of the plaintiffs, Johnson and Laird, were sureties upon the probate bond given by Starr, as administrator ; that the testator devised to his wife, Ann Brown, the income or interest of all his personal estate, and to Starr, who was her son, the use and improvement of his real estate, and provided that after their deaths respectively the property, real and personal, should go to Jane Grinstead and others ; that in the inventory of the assets of the testator was included a promissory note of William Ashby, junior, dated June 26, 1819, for the sum of $2000 with interest, which was secured by a mortgage of certain real estate; that at the December term of the Court of Common Pleas in 1827, Starr, as administrator, recovered against Ashby judgment for possession under the mortgage ; that on March 5, 1828, possession was accordingly delivered to him by a deputy sheriff; that on March 26, 1828, an agreement was made between Starr and the assignees of Ashby, in regard to such debt, by which it was stipulated that the mortgaged premises should be relinquished to Starr in his capacity of administrator ; that in pursuance of such agreement, Ashby, on April 7, 1828, for the consideration of one dollar, released his right in equity in the mortgaged land to Starr, but did not designate him as administrator, in the deed ; that on July 3, 1829, Starr, by a deed of that date, without describing himself as administrator, for the consideration of one dollar, conveyed the land to Ann Brown; that on August 11, 1829, Ann Brown, for the consideration of one dollar, conveyed the land to Starr as the administrator of John Brown ; that on December, 1829, the administration account of Starr was settled in the Probate Court, and a balance was found due from him amounting to the sum of $3453·27 ; that in such settlement no account was made of the note or mortgage other than the following, to wit, that the testator's estate was credited with the whole amount of the inventory thereof, in which was included an entry of the sum of $2000, being the face of the note ; that by the agreement of Grinstead and other legatees.

but without the knowledge or consent of Johnson and Laird, Starr was allowed the sum of $500, upon such settlement, as a deduction from the note ; that on January 30, 1830, Starr, the administrator, by a deed of that date, for the consideration of one dollar, but without obtaining any license of court therefor, conveyed the land to Ann Brown ; that in May, 1830, Ann Brown died, and by her will, devised such land and all her other estate to Joseph George, her executor and one of the defendants, in trust for the sole benefit of Starr ; that at the June term of the Court of Common Pleas in 1830, the defendant, Edmund Bartlett, recovered judgment against Starr for a private debt and extended his execution on a part of the land in question for the sum of $384·98, and afterwards under a judgment obtained at the next succeeding September term extended his execution on another part of the land for the further sum of $156·17 ; that the defendants, Jonathan Kettle and John B. Titcomb, as executors of William Noyes, also recovered judgment against Starr, for a private debt, at the May term of this Court in 1832, for the sum of $5994·70, damages and costs, and extended their execution on the same land to the amount of $2300, being the whole of the residue thereof not previously extended upon by Bartlett ; and that on January 18, 1831, Grinstead and others, residuary legatees, sued out a writ in the name of the judge of probate against Starr, Laird and Johnson, to recover the sum due them under the will, and at the November term of this Court in 1832, obtained judgment against them for a large sum of money.

The bill further set forth, that George and Starr pretend, that by virtue of these several conveyances and of the settlement of the account in the Probate Court, Ann Brown became seised of such land in fee, and that it was well devised to George in trust ; but that the plaintiffs charge, that Starr, as administrator of John Brown, held the land in question in trust for the uses of the will of John Brown, and could not lawfully divert the same to his own use, or convey it in gift to his mother, or otherwise, except by virtue and in pursuance of a license of court.

The bill also set forth, that George and Starr further pre-

Johnson
*v.*
Bartlett.

tend, that the goods and estates devised to George in trust for the use of Starr, should be held for his benefit exc usively of all claims of creditors or others ; but that the plaintiffs charge, that the same are liable to be taken and appropriated in satisfaction of the judgment recovered on the probate bond against Starr, as administrator of John Brown, that such personal estate is part and parcel of the balance of $3453·27 found due from Starr on the settlement of his account in the Probate Court, and not paid over by Starr to the devisees under the will of John Brown, and that it should be delivered up by George to the plaintiff, Cushing, or otherwise appropriated to the payment to the legatees, of the sum so found to be due to them on the settlement in the Probate Court.

The bill further set forth, that Bartlett, Kettle and Titcomb pretend, that by force of such conveyances and settlement, Starr became personally seised of the land, so as to render it liable to attachment and extent for his debts ; but that the plaintiffs charge, that the same was held by him as administrator, at the date of their attachments and of the extents of the executions, or in trust for the benefit of John Brown's estate, and so could not, in either case, be attached for the personal debts of Starr.

The answer of Bartlett sets forth, that on April 7, 1828, Ashby sold and conveyed to Starr all his right, title and interest in and to the mortgaged premises, by reason whereof Starr became seised of the same in his own right in fee and not in his capacity of administrator ; that in December, 1829, Starr settled his account of the administration of John Brown's estate, and in that account allowed and credited the note due from Ashby, to the satisfaction of the judge of probate, from which settlement so made, no appeal had been claimed ; and that at the November term of this Court in 1832, judgment was recovered against Starr and the sureties on his probate bond, for the full amount due upon such settlement, which judgment remained unreversed and in force.

The answer of George and Starr set forth, that the value of the personal estate of Ann Brown, according to the inventory thereof, was $548·27 ; that it was her property and not part or parcel of the sum of $3453·27, alleged to be due from

Starr, on his administration account ; that the same was attach-
ed, except so much thereof as was by law exempt from attach-
ment, by virtue of the writ sued out by Jane Grinstead and
others in the name of the judge of probate ; that it was after-
wards, by consent of parties, sold by the attaching officer,
and the proceeds thereof retained to satisfy the judgment that
might thereafterwards issue upon such writ ; that the respond-
ents believed that it was not liable to be appropriated towards
the satisfaction of such judgment, but that the same ought now
and ever to remain and have remained in the possession of
George, agreeably to the provisions of the will of Ann
Brown.

It appeared that in the action brought by Starr against Ash-
by in 1827, Starr counted upon the seisin of the testator and
on his own qualified seisin, as administrator with the will an-
nexed ; that the judgment in such action was general and not
conditional ; and that Bartlett attached the land in question by
virtue of two writs in his favor, in January 1830, but previ-
ously to the conveyance by Starr to Ann Brown on January
30, 1830 ; that Ashby, in his deed to Starr, remised, released
and for ever quitclaimed to Starr, all his right, title, interest
and claim to the premises described, adding after the descrip-
tion, " meaning hereby expressly to relinquish all my right to
redeem the same upon my mortgage to John Brown, late of
Newburyport, deceased."

*Saltonstall* and *Cushing*, for the plaintiffs. If the defend-
ants take any estate or interest under these conveyances, levies
and devises, they take the same clothed with a trust arising
under a deed, will, or in the settlement of an estate. This
therefore is a case within the equity jurisdiction of the Court,
under *St.* 1817, *c.* 87. *Gibbens* v. *Peeler*, 8 Pick. 254 ,
*Fay* v. *Hunt*, 5 Pick. 398 ; *Harrington* v. *Brown*, 5 Pick.
521 ; *Jennison* v. *Hapgood*, 7 Pick. 1 ; *Holland* v. *Dickin-
son*, 10 Pick. 4 ; *Campbell* v. *Sheldon*, 13 Pick. 23. The
fee of the land in question when attached, was in Starr, as
administrator? He never acquired any title personally, but it
continued in the representative of John Brown. As adminis-
trator, Starr could not sell it without a license. *St.* 1783, *c.*
32, § 1 ; *St.* 1788, *c.* 66 ; *St.* 1812, *c.* 24 ; *St.* 1814, *c.* 71 ;

Johnson
*v.*
Bartlett.

*Nov. 3d*

Johnson
v.
Bartlett.

*Dean* v. *Dean*, 3 Mass. R. 258 ; *Drinkwater* v. *Drinkwater*, 4 Mass. R. 354 ; 1 Madd. Ch. 578, 579 ; *Farr* v. *Newman*, 4 T. R. 621 ; 1 Williams on Executors, 402. Starr held the land as trustee, because he paid for it with the property of his testator ; and consequently, he could not purchase. It is not necessary to show fraud, in order to avoid such purchase. *Herne* v. *Meeres*, 1 Vern. 465 ; *Ayliffe* v. *Murray*, 2 Atk. 59 ; *Green* v. *Winter*, 1 Johns. Ch. R. 36 ; 1 Madd. Ch. 110, 112 ; 2 Williams on Executors, 613, 625 ; Toller on Executors, 239 ; *Hayward* v. *Ellis*, 13 Pick. 272 ; *Jennison* v. *Hapgood*, 7 Pick. 8 ; *Coles* v. *Trecothick*, 9 Ves. 246 ; *Morse* v. *Royal*, 12 Ves. 373 ; *Fox* v. *Mackreth*, 2 Bro. C. C. 400 ; *S. C.* 2 Cox's Eq. Cas. 320 ; *Lacey, ex parte.* 6 Ves. 625 ; *Downes* v. *Grazebrook*, 3 Meriv. 208 ; *Wormley* v *Wormley*, 8 Wheaton, 421. The contract with the legatees does not aid the defendants. *Morse* v. *Royal*, 12 Ves. 355 ; *Murray* v. *Palmer*, 2 Sch. & Lefr. 485 ; *Jackson* v. *Van Dalfsen*, 5 Johns. R. 43 ; *Munro* v. *Allaire*, 2 Caines's Cas. 183 ; *Davoue* v. *Fanning*, 2 Johns. Ch. R. 252. The defendants had constructive notice, that this land was held in trust by Starr, for the facts were matters of record and apparent on the face of the title. *Dexter* v. *Harris*, 2 Mason, 536. A court of equity will trace this property, there being an attempt to defraud. Powell on Mortg. (Rand's edit.) 1043 ; *Ryall* v. *Ryall*, 1 Atk. 59 ; *Van Horne* v. *Fonda*, 5 Johns. Ch. R. 388 ; *Brown* v. *Rickets*, 4 Johns. Ch. R. 303 ; *Lane* v. *Dighton*, Ambl. 414 ; 2 Fonbl. on Eq. 187 ; *Awdley* v. *Awdley*, 2 Vernon, 192 ; *Lindsay* v. *Lindsay*, 1 Desaussure, 150 ; Toller on Executors, 186 ; Rham on Assets, 319, 482, 493.

We contend, that the residuary legatees could have come in and claimed the benefit of this land as assets of the estate ; and the sureties of Starr are substituted in their place, and succeed to their rights. Theobald on Sureties, 252 ; *Cheeseborough* v. *Millard*, 1 Johns. Ch. R. 409 ; *Hancock* v. *Minot*, 8 Pick. 29.

*Gerrish* and *Cross*, for the defendants.

SHAW C. J. afterward drew up the opinion of the Court. This is a case in equity, brought by the administrator *de bonis*

*non*, with the will annexed, of the estate of John Brown, together with the sureties on a probate bond of a former administrator, with a view to obtain and apply, for the benefit of the estate and in relief of the sureties of the former administrator, certain real estate, which they claim as part of the assets of the estate applicable to the payment of debts and legacies, but which is claimed by the defendants, as having been duly and properly levied on, under the circumstances stated in their answers, as the estate of Clement Starr, the former administrator, or claimed and held by the defendant, George, under the will of Ann Brown. Perhaps on a strict examination, it might be found, that parties have been joined here, who have no common interest, and who are under no common liability ; still as the questions are the same, and as no objection has been taken on that account, we have not considered that point.

No direct question has been raised upon the subject of jurisdiction. The defendants claim different portions of the estate in controversy ; the defendant Bartlett claims under a levy of execution upon it, as the property of Clement Starr ; Kettle and Titcomb claim another part under a like levy ; and the defendants George and Starr claim, namely, George as devisee and trustee, and Starr as having an interest as *cestui que trust*, under the will of Ann Brown. The plaintiffs insist, that if under these levies, conveyances and devises, the defendants take any estate or interest, they take the same clothed with a trust created by law, and arising in the settlement of an estate, and this question is one which is placed within the equity jurisdiction of this Court, by the statute.

One suggestion was made, but not much relied upon by the defendants' counsel, that perhaps the original mortgage to Brown the testator might be deemed to be real estate, and if so, then the estate was given to Clement Starr for life, by the will of Brown, and that this circumstance would settle this case. But it is very clear that there is no ground for this suggestion. Whatever doubts there may have ever been, the *St.* 1788, *c.* 51, made expressly for removing doubts, has settled them. It declares in terms, that such mortgaged premises shall be assets in the hands of executors and administrators

as personal estate.   Here is no intimation, that the mortgagee had ever foreclosed or entered for condition broken ; but upon the evidence the contrary appears.   It further appears, that the administrator, pursuant to this statute, brought his action as such administrator, and had judgment in that capacity.   It is perfectly clear, then, that it could not be deemed the testator's real estate, when his will was made, and the clause in question had no operation upon it.

Then the question recurs, what was the nature of the title of Starr the administrator, under the various proceedings stated in the case.

Starr, in 1827, recovered judgment for seisin and possession of this estate, as estate mortgaged to his testator by Ashby.   In his writ he counts upon the seisin of his testator, and on his own qualified seisin, as such administrator, with the will annexed, and recovers judgment in that capacity.   Whether this was for condition broken, does not distinctly appear, and the judgment was general, and not conditional.   The copy of the mortgage deed which I have, makes the money payable in June 1830, (perhaps a mistake for 1820, the mortgage having been made in 1819.)   If the former was right, then the principal money was not payable when this judgment was recovered.   Probably this makes no difference to the present question.   Such being the state of this mortgage, the administrator alone could sue on it, it being held that by force of the statute, the heirs could not maintain an action on the title.   *Smith* v. *Dyer*, 16 Mass. R. 18.

But by the terms of the statute, § 2, the executor or administrator so recovering, shall be seised to the sole use and behoof of the widow and heirs, &c., or such devisees, &c., with a proviso, that it may be distributed by the judge of probate as personal estate, unless necessary for the payment of debts, legacies, annuities or charges, in which case it may be sold, under a license, in the usual mode provided by law for granting licenses to administrators to sell for payment of debts. The obvious construction of this statute and the construction put upon it, in the case above cited, is, that all authority over mortgaged estates, not taken possession of by the mortgagee in his lifetime, is by the statute vested in his executors and

administrators, as the trustees of the creditors and others interested in the personal estate of the deceased.

In the case of *Boylston* v. *Carver*, 4 Mass. R. 609, the Court were of opinion, that the words " seised to the use of the widow and heirs," both in this and another clause in the statute respecting land levied upon in satisfaction of a debt due to the estate, are not so to be construed, as to give effect to the statute of uses, and cause the estate to vest in possession, in the widow, &c., as a use executed by the statute, but to vest a trust estate in the administrator, until certain things required by the statute shall have been performed by him. He is to hold the estate, as trustee, until the purposes, for which it is placed under his control, are accomplished. If necessary for the payment of debts, legacies or charges, he is to obtain license to sell it ; if not so necessary, the judge of probate will pass a decree of distribution to the persons entitled to the intestate personal estate, in which case it may vest in the distributees, by force of such decree declaring the use and by force of the statute of uses and of the statute authorizing and directing such distribution ; or perhaps, the administrator, in the due execution of his trust, may be required to execute a deed without warranty, conformably to such decree.

In the case of *Webber* v. *Webber*, 6 Greenl. 127, the Supreme Court of Maine were of opinion, that upon that part of the statute, which applies to lands levied upon by an administrator to satisfy a debt due to the intestate, the words " shall be seised to the use of the widow and heirs," &c., ought to be so construed, as to vest the estate in the heirs, after the period of redemption had expired and after all the debts and legacies had been paid, all the purposes accomplished for which it is vested in the administrator in trust. This however only strengthens the position, that an executor or administrator, by obtaining seisin of premises, mortgaged to his testator or intestate, or by levying on real estate to satisfy a debt due to the estate, although he obtains a legal seisin, takes no beneficial interest, and can only dispose of the estate in the manner provided by the statute.

From these views it follows, that when Starr obtained judg-

41 *

ment against Ashby on the mortgage, counting as administra-
tor, and recovering as administrator, he had the qualified seis-
in, contemplated by the statute, in *auter droit*, and no other.
It was an estate in trust. Was it changed by the subsequent
deed of Ashby ? It is very manifest that when Starr, as ad-
ministrator, recovered judgment and entered under his *habere
facias*, Ashby had the same right of redemption for three
years, that he would have had against the original mortgagee,
whom the administrator represented. Starr, as administrator,
had power to receive the amount due, and to discharge the
mortgage. But if not redeemed, the estate would be fore-
closed by the lapse of three years, and then the estate would
become absolute, but still a trust estate, to be held and admin-
istered in his official capacity, as the assets of the estate, in
the manner directed by statute. Having a right to foreclose
the mortgage by entry, with or without judgment, and lapse of
time, had he not a right to do the same thing, by another
mode, as by taking a release of the equity ? It is difficult to
perceive any objection to it. It does not change the nature
or quality of the estate, but only extinguishes an outstanding
right, or incumbrance. The estate is vested in him, by force
of the deed to the original mortgagee, the judgment and en-
try, and the right of the mortgager is a right in equity to re-
deem. It then becomes necessary to look at the deed from
Ashby to Starr, executed a few weeks after Starr had entered
under his judgment. In consideration of one dollar he doth
remise, release and for ever quitclaim to said Clement Starr,
not described or named as administrator, all his right, title, in-
terest and claim to the premises (described), adding after the
description, " meaning hereby expressly to relinquish all my
right to redeem the same upon my mortgage to John Brown,
late of Newburyport, deceased." This deed, we think, must
operate, according to the plain terms of it, as a release, not
to create a new estate, but to enlarge an estate, already vested
in the releasee, to render that, which was before defeasible
and conditional, an estate absolute and unconditional. The
nature and character of the estate is determined, not by the
terms of the release, but by the former title to which the
release enured. The position of the defendants, therefore,

that this deed, not mentioning the releasee as administrator, created a new estate to him in his own right, is, we think, wholly untenable. But had this deed been in other terms, had it been in ever so express words a grant or other form of conveyance, it could only enure by way of release, and therefore by the rules of law should be held so to enure. A deed that s intended and made to one purpose, may enure to another, for if it will not take effect in that way it is intended, it may take effect another way. And therefore a deed made and intended for a release, may amount to a grant of a reversion, an attornment, or a surrender, and *e converso*. Shep. Touch. 82. As against the mortgagee or his representative, all the right which the mortgager had, was a right in equity to redeem, and this is all he could pass, by any form of deed. But there is another principle applicable to the case. If it had been the intention of Ashby to give, and Starr to take, an absolute conveyance to himself in his own right, and thus defeat the rights of those interested in the estate, it would have been a fraud ; and then the maxim is, that where an act is doubtful or equivocal, and construing it one way will show that the parties acted consistently with the rules of law, and construing it otherwise will show that they intended to violate the rules of law, it shall be presumed, that they intended to conform to the rules of law, and the transaction is to be construed and applied accordingly.

But it is not necessary to resort to the aid of this principle, because it is apparent, that the deed, upon the face of it, was intended as a release, that it operated as a release, that the legal effect of it was, to bar the equity of redemption, to foreclose the mortgage, and to put the administrator in the same situation in regard to the estate, as if it had been foreclosed by lapse of time and the operation of law.

Such being the nature of the estate held by the administrator, it is clear by the statute, that he could only make a good title to the purchaser, under a license duly obtained, and conforming to all the requisites of the law, on the subject of sales by license. If he was technically seised, it was a naked seisin in his official capacity, in trust and for the use of others, the execution of which trusts is directed and regulated by statute.

It becomes therefore unnecessary to consider the subsequent conveyance by Starr to his mother, and the several conveyances and reconveyances between them ; because by that first conveyance, no estate passed to her, or if technically any estate did pass, it was clothed with the same trusts, under which the administrator held it. If the latter is the just legal view of it, then it is to be considered, that this was a trust created by law, belonging to the administrator, in right of his office, that it depended upon acts and conveyances which vere matter of record, and apparent upon the face of the title, and therefore every person taking, or attempting to take a title, under Starr, must be deemed in law, to take with notice of these trusts. No beneficial title therefore passed by any of the conveyances or levies stated in the pleadings ; and the plaintiff, Cushing, as the present representative of the estate, is entitled to have the lands in question, discharged of all adverse title, and incumbrance created, or attempted to be created thereon, by the former administrator, in order that the proceeds may be administered and appropriated according to law, as the proper assets of the estate, and the other plaintiffs are entitled to have this done, as sureties on the bond of the former administrator and for their relief. The latter ground is strengthened by another principle of equity, that where sureties have paid, or are held liable to pay the debt of their principal, they have a right in equity, to the benefit of all funds and assets, so far as they can be specifically reached, which their principal held, as specifically applicable to the debt which the sureties have paid, and to have them placed in such a condition as to be made available for that purpose.

It has been contended, that from the settlement of the probate account, it will appear that Starr credited the amount of Ashby's debt as a debt collected, and had an allowance of $500 for the alleged difference in value, between the nominal amount of the debt, and the value of the mortgaged estate received in satisfaction, and it is alleged in the answer, that from this decree there was no appeal. It is difficult to perceive how this account affects the question. He was bound to credit the debt, whether he received it in cash, or took the property pledged in satisfaction. This did not affect the cnar-

acter of the assets in his hands, or enable him to hold in his own right, or apply to his own use, the assets held by him to meet this balance.   If he had actually paid the balance of this account, with his own funds, it might have given him at least an equitable claim on the estate ; and as all the purposes of the trust would have then been accomplished, and no one could complain, and the legal seisin was in himself, perhaps at law his title might have been good.   But if it was intended to allow the amount in account, and to take the trust property liable to pay it, to his own account, and leave his sureties responsible for payment of the account thus allowed, it was a plain fraud upon them.

But supposing there had been an agreement between the legatees, and the administrator, that he should allow the amount in account, with a deduction of $500, and take the mortgaged property to himself, it would be an agreement which could not be supported, and this on many grounds.   It would be a fraud upon the sureties ; it would in effect be a purchase without deed ; and it would be a sale of trust property by a trustee to himself ; it would be a disposition of the assets, by an officer, whose duties are directed and governed by law, contrary to the rules of law.   Such an agreement, if ever so distinctly made and clearly proved, could not be supported.

The Court are all of opinion that the plaintiffs are entitled to the relief prayed for